# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Peterson*, 2011 IL App (3d) 100513

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DREW PETERSON, Defendant-Appellee. |
| District & No. | Third District<br>Docket Nos. 3-10-0513, 3-10-0514, 3-10-0515, 3-10-0546, 3-10-0550 cons. |
| Filed | July 26, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In the State's interlocutory appeal, the appellate court lacked jurisdiction to consider the trial court's refusal to admit 8 of the 14 hearsay statements it offered under the common law doctrine of forfeiture by wrongdoing where the notice of appeal was untimely and there was no showing of any material change in the facts that would justify an untimely filing pursuant to Supreme Court Rule 604(a)(1) or 606(c), and, further, the exclusion of evidence of other crimes defendant allegedly committed was neither arbitrary nor unreasonable, and the trial court's refusal to allow the attorney who was representing defendant's wife in their divorce proceedings to testify as to what the judge in that case would have ruled if defendant's wife had lived was not an abuse of discretion. |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 09-CF-1048; the Hon. Stephen D. White, Judge, presiding. |

| Judgment | No. 3-10-0514, Dismissed for lack of jurisdiction. |
| | Nos. 3-10-0515 and 3-10-0550, Affirmed; cause remanded. |
| | Nos. 3-10-0513 and 3-10-0546, Affirmed; cause remanded. |

| Counsel on Appeal | James Glasgow (argued), State's Attorney, of Joliet (Colleen M. Griffin (argued), Assistant State's Attorney, of counsel), for the People. |
| | Steven A. Greenberg (argued), of Steven A. Greenberg, Ltd., Joseph R. Lopez, Joel A. Brodsky, of Brodsky & Odeh, Ralph E. Meczyk, Darryl Goldberg, and Lisa M. Lopez, all of Chicago, for appellee. |
| Panel | JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion. |
| | Justice Schmidt concurred in the judgment and opinion. |
| | Presiding Justice Carter concurred in part and dissented in part, with opinion. |

**OPINION**

¶ 1    The defendant, Drew Peterson, was charged with two counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2004)) in connection with the death of Kathleen Savio. During pretrial matters, the circuit court issued several rulings on the admissibility of evidence the State intended to present at trial. The State appealed from these rulings, arguing that the court erred when it: (1) denied the State's motion *in limine* to admit certain hearsay statements under the common law doctrine of forfeiture by wrongdoing; (2) denied the State's motion *in limine* to admit other-crimes evidence; and (3) excluded portions of the proposed testimony of attorney Diane Panos, whom the State had intended to call as an expert witness.

¶ 2                                     FACTS

¶ 3    On March 1, 2004, Kathleen Savio, the defendant's third wife, was found dead in her bathtub. At the time of her death, the Illinois State Police conducted an investigation into Kathleen's death and a pathologist performed an autopsy. The pathologist concluded that Kathleen had drowned but did not opine on the manner of death. A coroner's jury subsequently determined that the cause of death was accidental drowning. No charges were filed in connection with her death.

¶ 4    Several months before Kathleen's death, the judge presiding over divorce proceedings

between Kathleen and the defendant entered a bifurcated judgment for dissolution of their marriage. The court's judgment reserved issues related to matters such as property distribution, pension, and support. A hearing on those issues had been scheduled for April 2004.

¶ 5     The defendant's fourth wife, Stacy Peterson, disappeared on October 27, 2007. Stacy and the defendant had been discussing a divorce. Following Stacy's disappearance, Kathleen's body was exhumed and two additional autopsies were conducted. The pathologists who conducted the autopsies concluded that Kathleen's death was a homicide.

¶ 6     On May 7, 2009, the State charged the defendant with the murder of Kathleen. During pretrial proceedings, the defendant contested the admissibility of some of the evidence the State intended to present at trial. Three rulings of the circuit court on these matters are the subject of this appeal. The State has appealed each of these rulings separately by filing three discrete interlocutory appeals which were consolidated for briefing. Each of the three appeals is discussed in turn below.

¶ 7     I. APPEAL No. 3-10-0514: ADMISSIBILITY OF HEARSAY STATEMENTS

¶ 8     In appeal No. 3-10-0514, the State challenges the circuit court's refusal to admit certain hearsay statements allegedly made by Kathleen and Stacy. On January 4, 2010, the State filed a motion *in limine* arguing that 11 statements made by Kathleen and 3[1] statements made by Stacy were admissible under section 115-10.6 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10.6 (West 2008) (hearsay exception for the intentional murder of a witness)) and under the common law doctrine of forfeiture by wrongdoing. Section 115-10.6 of the Code provides that "[a] statement is not rendered inadmissible by the hearsay rule if it is offered against a party that has killed the declarant in violation of clauses (a)(1) and (a)(2) of Section 9-1 of the Criminal Code of 1961 intending to procure the unavailability of the declarant as a witness in a criminal or civil proceeding." 725 ILCS 5/115-10.6(a) (West 2008). The statute requires the circuit court to conduct a pretrial hearing to determine the admissibility of any statements offered pursuant to the statute. 725 ILCS 5/115-10.6(e) (West 2008). During the hearing, the proponent of the statement bears the burden of establishing by a preponderance of the evidence: (1) that the adverse party murdered the declarant and that the murder was intended to cause the unavailability of the declarant as a witness; (2) that the time, content, and circumstances of the statements provide "sufficient safeguards of reliability"; and (3) that "the interests of justice will best be served by admission of the statement into evidence." 725 ILCS 5/115-10.6(e) (West 2008). The circuit court must make "specific findings as to each of these criteria on the record" before ruling on the admissibility of the statements at issue. 725 ILCS 5/115-10.6(f) (West 2008). The statute provides that it "in no way precludes or changes the application of the existing common law doctrine of forfeiture by wrongdoing." 725 ILCS 5/115-10.6(g) (West 2008). The common law doctrine of forfeiture by wrongdoing provides a hearsay exception for

---

[1]The State's motion had included four statements made by Stacy, but the State withdrew one of the statements at the hearing on the State's motion.

statements made by an unavailable witness where the defendant intentionally made the witness unavailable in order to prevent her from testifying. *People v. Hanson*, 238 Ill. 2d 74 (2010); *People v. Stechly*, 225 Ill. 2d 246, 272-73 (2007).

¶ 9    The State asked the circuit court to conduct a hearing to determine the admissibility of these hearsay statements under both the statute and the common law doctrine of forfeiture by wrongdoing and sought the admission of the statements under both the statute and the common law. In January and February 2010, the circuit court held an evidentiary hearing on the State's motion. The State argued, *inter alia*, that the defendant killed Kathleen with the intent of preventing her testimony at the hearing on the distribution of the marital property. The State also argued that the defendant killed Stacy with the intent of preventing her testimony not only at a future divorce and property distribution hearing, but also at a trial for Kathleen's murder. Seventy-two witnesses testified at the hearing, including three pathologists. Two pathologists testified for the State that Kathleen's death was a homicide. The defense's pathologist disagreed with the State's pathologist's conclusions and testified that Kathleen had drowned accidentally.

¶ 10    The circuit court took the matter under advisement and issued its written ruling on May 18, 2010. Applying the statutory criteria, the court found that the State had proved by a preponderance of the evidence that: (1) the defendant murdered Kathleen and Stacy; and (2) he did so with the intent to make them unavailable as witnesses. Further, the court found that, pursuant to the statute, 6 of the 14 proffered hearsay statements contained sufficient "safeguards of reliability" and that the interests of justice would be served by the admission of those statements into evidence. The court found the following six statements admissible under the statute: (1) portions of a letter that Kathleen wrote to the Will County State's Attorney's office which described a confrontation that Kathleen allegedly had with the defendant on July 5, 2002, while the divorce proceedings were pending;[2] (2) a redacted version of a handwritten statement that Kathleen gave to the Bolingbrook police describing the alleged July 5, 2002, incident; (3) a statement that Kathleen allegedly made to her sister, Anna Doman; (4) a statement that Kathleen allegedly made in late 2003 to Mary Sue Parks, who attended nursing classes with Kathleen at Joliet Junior College; (5) another statement that Kathleen allegedly made to Parks; and (6) a statement that Stacy allegedly made to her pastor, Neil Schori, regarding an encounter that she allegedly had with her husband on the night Kathleen died.

¶ 11    The circuit court ruled that the remaining eight hearsay statements proffered by the State did not meet the statutory standard of reliability and that the interests of justice would not be served by the admission of those statements. The court excluded the following statements under the statute: (1) statements that Kathleen allegedly made to her other sister, Susan Doman; (2) a statement that Kathleen allegedly made to her attorney, Harry Smith; (3) statements that Kathleen allegedly made to her friend, Kristen Anderson, regarding the alleged July 5, 2002, incident; (4) a statement that Kathleen allegedly made to Issam Karam, one of her former coworkers; (5) statements that Stacy allegedly made to Michael Miles, whom she had met at Joliet Junior College in 2002; (6) a statement that Stacy allegedly made

---

[2]Other portions of Kathleen's letter were redacted by the circuit court.

to her friend, Scott Rossetto, in the fall of 2007 regarding her alleged encounter with the defendant on the night Kathleen died; (7) portions of an audiotaped statement made by Kathleen to an insurance agent; and (8) portions of statements that Kathleen made under oath during an examination conducted by a Country Insurance agent on August 6, 2003.[3] As noted above, the court also redacted portions of Kathleen's letter to the Will County State's Attorney's office and her written statement to the Bolingbrook police regarding the alleged July 2002 incident.

¶ 12     The circuit court's May 18, 2010, order failed to address whether any of the proffered statements were admissible under the common law doctrine of forfeiture by wrongdoing, as the State had requested in its motion. On May 28, 2010, the defendant filed a motion to clarify the circuit court's ruling. The defendant's motion asked the court to clarify whether it ruled under the common law doctrine. During a hearing held the same day, the court stated, "I didn't even get to that. There was no request as to any of the others. I ruled strictly pursuant–there was a hearing pursuant to the statute."

¶ 13     On June 30, 2010, the State filed another motion to admit the hearsay statements in which the State again requested the circuit court to rule on the admissibility of the same hearsay statements under the common law doctrine of forfeiture by wrongdoing. In both the body of the June 30 motion and in the prayer for relief, the State asked the court to "reconsider" its decision to exclude the hearsay statements at issue and urged the court to admit the statements under the common law doctrine. In seeking this relief, the State relied upon the Illinois Supreme Court's decision in *People v. Hanson*, 238 Ill. 2d 74 (2010), which was issued on June 24, 2010. The State argued that *Hanson* had "clarified that the Illinois common law doctrine of forfeiture by wrongdoing is both a hearsay exception and an exception to the Confrontation Clause, and that the reliability of any such hearsay statement is not relevant to its admissibility [under the common law doctrine]." The State also argued that *Hanson* had "expressly adopted" Federal Rule of Evidence 804(b)(6), which establishes a hearsay exception for "[f]orfeiture by wrongdoing," as the law in Illinois. In the prayer for relief, the State asked the court to "reconsider its ruling on the statements previously excluded under the statutory criteria and, pursuant to the common law doctrine of forfeiture by wrongdoing and Federal Rule of Evidence 804(b)(6), admit those statements at trial."

¶ 14     The defendant objected that the State's motion to reconsider was untimely because the State did not file the motion within 30 days of the circuit court's May 18 order. On July 6, the court issued an order denying the State's motion, which it described as a motion to reconsider the May 18 ruling. The court's order did not address the defendant's argument that the State's motion was untimely or provide any specific reasons for its ruling. Two days

---

[3]Because the circuit court record and the parties' briefs on appeal have been placed under seal, we have chosen not to reveal the content of these statements. We are concerned that the public dissemination of these statements could taint the jury pool. It would be particularly ill-advised to reveal the content of prejudicial statements that were *excluded* by the circuit court. Accordingly, we have also chosen not to discuss the details of Eric Peterson's, Anna Doman's, and Victoria Connolly's testimony regarding prior crimes allegedly committed by the defendant, which the circuit court excluded.

later, however, the court stated that its ruling was based on its belief that the statute codified the common law and that the statute therefore takes precedence over the common law unless the statute is declared unconstitutional or otherwise invalidated.

¶ 15 On July 7, 2010, one day before the trial was scheduled to begin, the State filed a notice of appeal and a certificate of impairment. Both of these documents indicated that the State was appealing the circuit court's May 18, 2010, order and its July 6 denial of the State's "motion to reconsider" that order. In the certificate of impairment, the State asserted that the circuit court's May 18, 2010, order suppressing certain hearsay statements substantially impaired the State's ability to proceed with the case and rendered the State "unable to proceed to trial."

¶ 16 The defendant moved to dismiss the State's appeal as untimely. The defendant argued that the State's appeal was jurisdictionally defective because the State had failed to file either a motion to reconsider or a notice of appeal within 30 days of the circuit court's May 18, 2010, order, as required by Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2006) and various supreme court decisions construing that rule, including *People v. Holmes*, 235 Ill. 2d 59, 67-68, 72 (2009). The defendant also argued that the supreme court's decision in *Hanson* did not announce any change in the common law. In response, the State filed a motion for leave to file a late notice of appeal under Illinois Supreme Court Rule 606(c) (eff. July 1, 1971). Four days later, the State filed an amended notice of appeal which indicated that the State was appealing both the circuit court's May 18 and July 6 orders. The amended notice omitted any reference to a "motion for reconsideration."

¶ 17 On August 9, 2010, this court allowed a late notice of appeal to be filed and denied as moot the defendant's motion to dismiss the appeal. The defendant then filed a motion for supervisory order in the Illinois Supreme Court asking the supreme court to order this court to vacate its ruling allowing the State to file a late notice of interlocutory appeal. The supreme court denied the defendant's motion without explanation or analysis.

¶ 18 II. APPEAL Nos. 3-10-0515 AND 3-10-0550: OTHER-CRIMES EVIDENCE

¶ 19 In appeal Nos. 3-10-0515 and 3-10-0550, the State appeals the circuit court's denial of the State's motion *in limine* to admit other-crimes evidence.[4] This evidence included the testimony of Eric Peterson, the defendant's son from his first marriage, and Anna Doman, Kathleen's sister. Eric and Anna testified regarding an incident of domestic abuse that the defendant allegedly committed upon Kathleen during their marriage in 1993. The State also presented the testimony of the defendant's second wife, Victoria Connolly, who was married to the defendant from 1982 to 1992. Connolly testified about three instances of threats and/or abuse that the defendant allegedly committed during their marriage and another alleged

---

[4]The State filed appeal No. 3-10-0515 within 30 days of the circuit court's oral ruling denying the State's motion *in limine*. Because the circuit court had not yet issued a written order at that time, the State was concerned that its appeal might be deemed premature. Accordingly, after the circuit court denied the State's subsequent motion to issue a written order, the State filed appeal No. 3-10-0550 as a precaution. Both appeals address the same ruling by the circuit court, and the defendant does not argue that the State's appeal of this issue is untimely.

-6-

incident involving the defendant which occurred after she had divorced him in 1992. The State argued that this evidence was admissible under the common law to show the defendant's motive and intent to kill Kathleen. It also argued that the evidence was admissible under section 115-7.4 of the Code (725 ILCS 5/115-7.4 (West 2008) (allowing the admission of other-crimes evidence for any relevant purpose in domestic violence cases)) to show the defendant's propensity to commit crimes of domestic violence.

¶ 20    On June 18, 2010, the circuit court held a hearing on the State's motion. In an oral ruling issued during the hearing, the court excluded the State's other-crimes evidence under section 115-7.4 of the Code and the common law because it considered the evidence too remote. In this regard, the court focused on the timing of the incidents and indicated that the State's inability to show a continuing course of domestic violence rendered the evidence inadmissible. Maintaining that the circuit court's order effectively suppressed evidence, the State filed a certificate of impairment and a timely notice of appeal on July 7, 2010.

¶ 21                    III. APPEAL Nos. 3-10-0513 AND 3-10-0546:
                    ADMISSIBILITY OF PROPOSED EXPERT TESTIMONY

¶ 22    In appeal Nos. 3-10-0513 and 3-10-0546, the State appeals the circuit court's granting of the defendant's motion *in limine* to exclude the testimony of Diane Panos, an attorney whom the State intended to call as an expert witness.[5] The State intended to present Panos's opinion on the minimum possible financial impact that the marital property distribution proceeding would have had on the defendant had Kathleen lived. Panos's proposed opinion included a prediction of what the judge would have ruled at the hearing.

¶ 23    On July 2, 2010, the circuit court ruled that Panos could testify as to the statutory factors that would have been applicable to the marital property distribution case between Kathleen and the defendant. However, after commenting that "[y]ou can't sit there and tell a jury that this judge is going to do this when we have no idea what the judge is going to do," the court prohibited Panos from testifying as to how the judge in the divorce case would have ultimately ruled at the marital property distribution proceeding. Further, the court also prohibited Panos from testifying as to what the defendant's attorney in that case would have advised him to expect to occur. In this regard, the court stated, "[t]hat's not an opinion coming into a criminal case based upon the facts that are there, and that's not an opinion that's going to go to a jury. This is a murder case. This is not a malpractice case with what a judge was going to do." On July 7, 2010, the State filed a certificate of impairment and a timely notice of appeal from the court's ruling limiting Panos's testimony.

¶ 24                                    ANALYSIS
¶ 25            I. ADMISSIBILITY OF HEARSAY STATEMENTS UNDER THE

---

[5]Although appeal No. 3-10-0513 was filed within 30 days of the circuit court's oral ruling on this issue, the defendant filed appeal No. 3-10-0546 as a precaution in case appeal No. 3-10-0513 was deemed premature. (See *supra* note 4.) The defendant does not argue that the State's appeal of this issue is untimely.

¶ 26    The State's argument in appeal No. 3-10-0514 relates to the circuit court's rulings on the admissibility of the aforementioned eight hearsay statements allegedly made by Kathleen Savio and Stacy Peterson. Although the circuit court's May 18, 2010, order admitted several other hearsay statements allegedly made by Kathleen and Stacy under section 115-10.6 of the Code (725 ILCS 5/115-10.6 (West 2008) (hearsay exception for the intentional murder of a witness)), it excluded the eight statements at issue partly because it found that they "[did] not provide sufficient safeguards of reliability as to the time, contents, and circumstances of the statements," as required by that statute. The State argues that the circuit court's refusal to admit these statements under the common law was an error that substantially impairs the State's ability to prosecute the defendant.

¶ 27    Although it is tempting to address the merits of the State's argument, we must resist this temptation because we lack jurisdiction to consider the State's appeal of this issue.

¶ 28                    A. Rule 604(a)(1) and the *Taylor* Rule

¶ 29    Supreme Court Rule 604(a)(1) authorizes the State to appeal certain types of interlocutory orders issued in criminal matters. Ill. S. Ct. R. 604(a)(1) (eff. July 1, 1969). Whether the State may appeal a particular order on an interlocutory basis "depends solely upon [the supreme court's] construction of *** Rule 604(a)(1)." (Internal quotation marks omitted.) *People v. Holmes*, 235 Ill. 2d 59, 66 (2009). In *People v. Taylor*, 50 Ill. 2d 136 (1971), and its progeny, the supreme court established a procedural framework governing interlocutory appeals under Rule 604(a)(1). *Holmes*, 235 Ill. 2d at 62. This framework, which is commonly referred to as the "*Taylor* rule," prescribes jurisdictional time limits for appeals brought under Rule 604(a)(1). Specifically, the *Taylor* rule requires a party seeking review of an order appealable under Rule 604(a)(1) to either appeal or file a motion to reconsider the order within 30 days. *Holmes*, 235 Ill. 2d at 72; *People v. Williams*, 138 Ill. 2d 377, 394 (1990). An exception to the *Taylor* rule permits review beyond the 30-day frame only when there is "a material change in the facts that could not have been presented earlier with *due diligence*." (Emphasis added.) *Holmes*, 235 Ill. 2d at 61, 67; see also *Williams*, 138 Ill. 2d at 394.

¶ 30    The 30-day time limit established by the *Taylor* rule is jurisdictional. *Holmes*, 235 Ill. 2d at 68, 72 (describing the *Taylor* rule as a "jurisdictional barrier"). Thus, if the State fails to file a motion to reconsider a trial court's order or a notice of appeal within 30 days of the issuance of the order, this court has no jurisdiction to hear any subsequently filed appeal of that order unless the State shows a material change in the facts that could not have been presented earlier with due diligence. *Holmes*, 235 Ill. 2d at 67-68, 72; *Williams*, 138 Ill. 2d at 394.

¶ 31    The order at issue in this case was issued by the circuit court on May 18, 2010. Under the *Taylor* rule, the State was required to file a motion to reconsider or a notice of appeal within 30 days, *i.e.*, by June 17, 2010. The State did neither. Instead, it filed a motion for reconsideration 43 days after the court's May 18 order and a notice of appeal 50 days after that order. These filings fell outside the jurisdictional deadline prescribed by the *Taylor* rule. Accordingly, we have jurisdiction to hear the State's appeal of the circuit court's May 18

order only if the State can show that there has been a material change in the facts that could not have been presented earlier with due diligence.

¶ 32 The State argues that the supreme court's decision in *Hanson*–which was issued one week after the 30-day deadline for appealing the May 18 order had expired–"marked a material change in the law of the doctrine of forfeiture by wrongdoing" that was "akin to a change in the facts" under the *Taylor* rule. In *Hanson*, the supreme court upheld the trial court's admission of certain nontestimonial hearsay statements against a murder defendant under the common law doctrine of forfeiture by wrongdoing. *Hanson*, 238 Ill. 2d at 96-99. In so holding, the supreme court rejected the defendant's argument that statements are admissible under the common law doctrine only if they are testimonial and only if they "show some measure of reliability." *Hanson*, 238 Ill. 2d at 96, 97-99. The State asserts the supreme court's decision in *Hanson* was the first time that the court expressly recognized that the common law doctrine is both a hearsay exception and an exception to the confrontation clause, and that the admissibility of a hearsay statement under the common law doctrine does not depend upon a showing that the statement is reliable.

¶ 33 We disagree. Assuming *arguendo* that a change in the governing *law* could trigger the *Taylor* rule's exception for a "material change in *facts*"–a question which we do not decide–the State cannot show that any change in the applicable law occurred here. The common law doctrine of forfeiture by wrongdoing was recognized by the United States Supreme Court as early as 1878. *Hanson*, 238 Ill. 2d at 96. In 1997, the doctrine was codified at the federal level by Federal Rule of Evidence 804(b)(6) as an exception to the general rule against hearsay. Fed. R. Evid. 804(b)(6); *Hanson*, 238 Ill. 2d at 96; *Giles v. California*, 554 U.S. 353, 367 (2008). Rule 804(b)(6) provides a hearsay exception for "[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." Fed. R. Evid. 804(b)(6). The rule does not condition the admissibility of such statements upon a showing that the statements are trustworthy or reliable. Fed. R. Evid. 804(b)(6); *United States v. White*, 116 F.3d 903, 912-13 (D.C. Cir. 1997).[6] In a case decided more than three years before *Hanson*, our supreme court adopted the common law doctrine as the law of Illinois and expressly recognized that the doctrine was "coextensive with" Federal Rule 804(b)(6), which was a "codifi[cation]" or "legislative enactment" of the doctrine. *People v. Stechly*, 225 Ill. 2d 246, 272-73 (2007) (citing *Davis v. Washington*, 547 U.S. 813, 833 (2006)).

¶ 34 Thus, contrary to the State's argument, it was clear long before *Hanson* that the common

---

[6]See also, *e.g.*, Anthony Bocchino & David Sonenshein, *Rule 804(b)(6)–The Illegitimate Child of the Failed Liaison Between the Hearsay Rule and Confrontation Clause*, 73 Mo. L. Rev. 41 (2008) (noting that, unlike the other hearsay exceptions, Rule 804(b)(6) "admits out-of-court statements bearing no indicia of trustworthiness" and "allows for the admission of any relevant statement made by the absent hearsay declarant irrespective of the trustworthiness of that statement"); Kelly Rutan, Comment, *Procuring the Right to an Unfair Trial: Federal Rule of Evidence 804(b)(6) and the Due Process Implications of the Rule's Failure to Require Standards of Reliability for Admissible Evidence*, 56 Am. U.L. Rev. 177, 179 (2006) (noting that "unlike other exceptions to the hearsay rule, the [Federal Advisory] Committee adopted the forfeiture by wrongdoing rule [in Rule 804(b)(6)] without any standards of reliability or particular guarantees of trustworthiness").

law doctrine of forfeiture by wrongdoing was a general hearsay exception in Illinois and that the admission of hearsay statements under the doctrine did not depend upon a showing of reliability. See *Stechly*, 225 Ill. 2d at 272-73; see also Michael H. Graham, Graham's Handbook of Illinois Evidence § 804.5, at 985 (10th ed. 2011) (citing *Stechly* for the proposition that "[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness is admissible *as an exception to the rule against hearsay*" (emphasis added)); Graham, *supra*, § 804.9, at 998-99 (stating that the common law forfeiture rule "results in the forfeiture of the defendant's right to confront witnesses against him *as well as the right to object to inadmissible hearsay*" (emphasis added), and noting that *Stechly* did not require a finding of "sufficient safeguards of reliability" with respect to statements admitted under the forfeiture rule (emphasis added)); Bocchino & Sonenshein, *supra*, at 81 (noting that *Stechly* adopted the common law doctrine as a general hearsay exception in Illinois without requiring a showing of trustworthiness).

¶ 35    *Hanson* further confirms this point. *Hanson* did not purport to expand or change the existing common law rule in any way. To the contrary, in *Hanson*, the supreme court noted that it had "already expressed" in *Stechly* that the common law doctrine was "coextensive with" Rule 804(b)(6), which "is a general exception to the hearsay rule." *Hanson*, 238 Ill. 2d at 97. Thus, when it stated in *Hanson* that the common law doctrine serves as an exception to the hearsay rule under Illinois law, the supreme court merely "expressly recognize[d]" something that was "left unsaid" but already clearly established by implication in *Stechly. Hanson*, 238 Ill. 2d at 97.

¶ 36    In addition, *Hanson*'s holding that the common law doctrine does not require a showing of reliability was not an alteration or even a clarification of the existing law. Rather, it was merely a straightforward statement of traditional common law principles. In rejecting the defendant's argument that the common law doctrine required a showing of reliability, the court stated that the defendant had "misapprehend[ed] the purpose" of the common law doctrine, which provides for the forfeiture of hearsay objections on equitable grounds. *Hanson*, 238 Ill. 2d at 97-98. The common law rule provides that a defendant who intentionally prevents a witness from testifying against him forfeits the right to challenge the reliability of the witness's hearsay statement. *White*, 116 F.3d at 912-13. Thus, the common law rule has *never* required a showing of additional indicia of reliability. *White*, 116 F.3d at 912-13; *cf. Crawford v. Washington*, 541 U.S. 36, 62 (2004) (noting that "the [common law] rule of forfeiture by wrongdoing *** extinguishes confrontation claims on essentially equitable grounds; it does not purport to be an alternative means of determining reliability"). Such a requirement would "undermine the equitable considerations at the center of the doctrine." *Hanson*, 238 Ill. 2d at 98. Thus, the supreme court did not change the law as to this issue in *Hanson*; rather, it rejected the defendant's invitation to change the law by imposing a requirement of reliability.[7]

---

[7]During oral argument, the State suggested that the application of the common law doctrine in Illinois was uncertain prior to *Hanson* because some other jurisdictions that had adopted the common law doctrine had required a showing of reliability. However, the State never raised this

¶ 37    Moreover, even if *Hanson* did clarify the common law rule in some material respects, that would not excuse the State's failure to file a timely appeal or motion to reconsider the circuit court's May 18 order. The State's January 4, 2010, motion to admit the hearsay statements at issue was based on *both* the statute *and* the common law rule. However, the court's May 18, 2010, order did not address the common law rule or reserve ruling on that issue. Ten days later, in response to the defendant's motion for clarification, the circuit court confirmed that it did not consider the common law doctrine in rendering its decision. For that reason alone, the State could have appealed or moved to reconsider the order within 30 days. This remains true even if the State reasonably believed, based on the law in existence at that time, that the common law forfeiture rule was merely an exception to the confrontation clause that applied only to testimonial statements, rather than a general hearsay exception that applied to nontestimonial statements. As the State conceded during oral argument, some of the hearsay statements that the circuit court excluded were testimonial statements. At a minimum, the State could have timely appealed the circuit court's exclusion of those statements under *Stechly*.[8]

¶ 38    In sum, the State had ample grounds to appeal or move to reconsider the circuit court's May 18 order within 30 days, and there was no "material change in facts" (or law) in this case that would excuse the State's failure to comply with the *Taylor* rule's jurisdictional deadline.

¶ 39    The State argues in the alternative that its appeal was timely because the court did not rule on the common law issue until July 6, 2010, one day before the State filed its notice of appeal. The State argues that, in its May 18 order, the circuit court ruled that the eight hearsay statements at issue were inadmissible under the statute, but it did not rule on the admissibility of those statements under the common law doctrine. The court did not expressly rule on the common law doctrine until July 6 when it denied the State's June 30 motion. The State claims that its July 7 notice of appeal addressed that ruling only, not the court's May 18 ruling that the statements were inadmissible under the statute. In essence, the State suggests that its June 30 motion addressed an entirely separate and independent issue which was not decided by the court until July 6. Thus, the State claims that its July 7 notice of appeal was timely under the *Taylor* rule.

¶ 40    We disagree. First, contrary to the State's suggestion, the State's June 30 motion did not raise any new issues. To the contrary, it raised the identical issue that the State had previously raised in its January 4 motion. In both motions, the State asked the court to admit

argument in its briefs. The argument is therefore waived. In any event, the law in other jurisdictions is irrelevant because, as shown above, the application of the common law doctrine in *Illinois* was clear long before *Hanson*.

[8]In any event, the State's conduct in this case belies any claim that the State believed that the common law doctrine applied only to testimonial statements prior to *Hanson*. The State's January 4, 2010, motion to admit the hearsay statements at issue, which was filed almost six months before *Hanson* was decided, argued for the admission of *all* of the proffered statements under the common law doctrine. The State did not limit its arguments under the common law doctrine to the testimonial statements.

the same 14 hearsay statements under the common law doctrine of forfeiture by wrongdoing. After the circuit court issued its May 18 order refusing to admit eight of the statements, the State filed its June 30 motion asking the court to "reconsider" its refusal to admit those statements and reasserting its argument that the statements were admissible under the common law. Both the circuit court and the State treated the State's June 30 motion as a motion to reconsider the court's May 18 ruling rather than a new, independent motion. The court referred to the State's June 30 motion as a motion to reconsider in its July 6 written order denying the motion. Similarly, in its initial notice of appeal and certificate of impairment, the State characterized its June 30 motion as a motion to reconsider the circuit court's May 18 order. In addition, the State's certificate of impairment and all of the notices of appeal filed by the State indicated that the State was appealing *both* the circuit court's May 18 order *and* its July 6 order. This refutes any suggestion that the State has appealed only the July 6 order.

¶ 41    Moreover, the fact that the circuit court did not rule on or even consider the common law doctrine in its May 18 order does not affect the analysis under the *Taylor* rule. Our supreme court has held that the *Taylor* rule's jurisdictional bar "resembles the doctrine of *res judicata*" in that it is "not limited to issues actually considered, but also covers any issues that *could have been raised* in the earlier proceeding." (Emphasis added.) *Holmes*, 235 Ill. 2d at 67; see also *Williams*, 138 Ill. 2d at 390-91 ("[N]one of our *Taylor* line of cases limited the *Taylor* rule only to those subsidiary issues that may actually have been considered ***. *** Each of the *Taylor* line of cases speaks of an order itself, not merely of issues upon which the order may or may not have turned."). In other words, the *Taylor* rule applies to appealable suppression orders *per se*, not merely to the legal grounds upon which those suppression orders were decided. *Holmes*, 235 Ill. 2d at 67; *Williams*, 138 Ill. 2d at 390-91.

¶ 42    In this case, the State's January 4 motion asked the circuit court to admit 14 statements under both the statute and the common law. The court ruled as to the admissibility of each of those statements in its May 18 order and it did not reserve ruling as to any of those statements. Thus, the circuit court's May 18 order was an appealable order under Rule 604(a) (*People v. Abata*, 165 Ill. App. 3d 184, 186-87 (1988); *Williams*, 138 Ill. 2d at 391), and the *Taylor* rule's 30-day time limit started to run upon issuance of that order. The fact that the May 18 order did not address every legal theory or ground for admission raised in the State's motion did not change this fact. *Holmes*, 235 Ill. 2d at 67; *Williams*, 138 Ill. 2d at 390-91. Under the *Taylor* rule, the State was required to appeal or move to reconsider the May 18 order within 30 days. Because the State failed to do so, it was barred from relitigating the suppression of those hearsay statements before the circuit court under *any* legal theory that was raised or could have been raised in the initial motion, even a theory that was not previously considered by the circuit court. *Holmes*, 235 Ill. 2d at 67; *Williams*, 138 Ill. 2d at 390-91; see also *People v. Daniels*, 346 Ill. App. 3d 350, 360 (2004); *People v. Lawson*, 327 Ill. App. 3d 60, 67 (2001). That includes the State's argument for the admission of the hearsay statements under the common law, an argument that the State actually did raise in its initial motion. Accordingly, both the State's June 30 motion to reconsider and its subsequent notices of appeal were untimely and jurisdictionally barred.

¶ 43    The dissent takes issue with this analysis in several respects. Although we disagree with

many of the assertions contained in the dissenting opinion, in the interest of brevity we will address only what we take to be the dissent's principal challenges to our analysis. We do this in order to dispel any potential confusion regarding our holding.

¶ 44     First, the dissent contends that the State's June 30 motion was timely filed because it sought to secure a ruling on the common law argument that the State had raised in its initial motion but that the circuit court had "ignored" in its May 18 order. *Infra* ¶¶ 92, 96; see also *infra* ¶¶ 85-91. Based on this premise, the dissent maintains that the State's appeal of the circuit court's order denying the State's June 30 motion was timely, and that the *Taylor* rule does not apply. *Infra* ¶¶ 85-96. The dissent fails to recognize that it is the circuit court's suppression order itself–not a ruling on the subsidiary issues or legal theories upon which the order may or may not have turned–that triggers the 30-day deadline for appeal or reconsideration under the *Taylor* rule. *Williams*, 138 Ill. 2d at 391. After that deadline has passed, the order suppressing evidence bars the litigation or appeal of any legal issues that could have been asserted in favor of the admission of that evidence, whether those issues were raised before the suppression order was issued (as here) or not. *Williams*, 138 Ill. 2d at 392 (holding that, like *res judicata*, the *Taylor* rule applies to all issues that "were or could have been" raised earlier).[9] In short, for purposes of the *Taylor* rule, what matters is the circuit court's judgment suppressing the evidence, not its reasons for doing so.

¶ 45     Here, the court issued an order on May 18 excluding some of the hearsay statements proffered by the State. That suppression order was immediately appealable under the *Taylor* rule regardless of whether it addressed each (or any) theory of admissibility raised by the State. *Holmes*, 235 Ill. 2d at 67; *Williams*, 138 Ill. 2d at 391. Thus, if the State desired either to appeal that suppression order or challenge the order before the circuit court, it was required to do so within 30 days. The fact that the May 18 order did not expressly address the State's common law argument or explain the circuit court's reasons for disregarding that argument is immaterial. After 30 days passed, the State could no longer challenge the circuit court's suppression of the 8 statements at issue unless it could show "a material change in the facts that could not have been presented earlier with due diligence." *Holmes*, 235 Ill. 2d at 61, 67; see also *Williams*, 138 Ill. 2d at 394. The State has failed to make such a showing. Thus, the State's June 30 motion was untimely, and we lack jurisdiction to review the circuit court's denial of that motion.[10]

¶ 46     The dissent's assertion that the State could not have appealed or moved to reconsider the

---

[9]This distinguishes both *res judicata* and the *Taylor* rule from the doctrine of collateral estoppel, which applies only "to the precise factual or legal issues actually litigated and decided when a prior order was entered." *Williams*, 138 Ill. 2d at 393.

[10]The dissent's contention that the State has appealed only the circuit court's denial of the State's June 30 motion (and not the May 18 order) (*infra* ¶¶ 85, 89, 96) is incorrect. As noted above, the State's certificate of impairment and all of the State's notices of appeal indicate that the State has appealed *both* the circuit court's May 18 order *and* its July 6 order. In any event, even if the State had appealed only the denial of the June 30 motion, it would not change the fact that we lack jurisdiction. Because the June 30 motion was untimely under the *Taylor* rule, the State's interlocutory appeal of the circuit court's denial of that motion is jurisdictionally barred. *Holmes*, 235 Ill. 2d at 64, 72.

-13-

circuit court's May 18 order until it obtained a ruling on its common law argument is incorrect. See *infra* ¶¶ 90-93. As noted above, the May 18 order ruled on the admissibility of each of the hearsay statements proffered by the State and was therefore immediately appealable under the *Taylor* rule even if it did not address every legal argument raised by the State. *Williams*, 138 Ill. 2d at 391. Thus, the dissent's reliance upon cases in which a litigant failed to obtain a ruling on a motion or trial objection before filing an appeal is misplaced. See *infra* ¶¶ 90-91 (citing *Lipsey v. People*, 227 Ill. 364, 373 (1907), and *People v. Urdiales*, 225 Ill. 2d 354, 425 (2007)); see also *infra* ¶ 92. Moreover, contrary to the dissent's suggestion, the State could have moved the circuit court to reconsider its May 18 order within 30 days of the issuance of that order. The May 18 order ruled on the admissibility of all of the statements proffered by the State and ruled that eight of those statements were inadmissible. The order did not reference the State's argument under the common law. Thus, from the moment the May 18 order was issued, it was clear that the court had issued a judgment adverse to the State and that the court had not admitted any of the proffered statements under the common law.[11] Accordingly, the State could have immediately filed a motion asking the court to reconsider its failure to admit the statements under the common law. The State did in fact file just such a motion on June 30, two weeks too late. Neither the State nor the dissent offers any plausible reason why the State could not have filed that motion within 30 days of the May 18 order, as required by the *Taylor* rule.[12]

---

[11]Even if this were somehow in doubt on May 18, any possible doubt was eliminated ten days later. For reasons that are not clear, the defendant filed a motion on May 28 asking the circuit court to clarify whether it had ruled under the common law doctrine. During a hearing held the same day, the court stated "I didn't even get to that. There was no request as to any of the others. I ruled strictly pursuant–there was a hearing pursuant to the statute." Thus, within the 30-day deadline, the State was on notice that the circuit court had failed to admit any of the proffered statements under the common law.

[12]The dissent asserts that the June 30 motion "could not have been a motion to reconsider the May 18 order" because "the circuit court could not reconsider something that it never considered in the first place." *Infra* ¶ 93. Once again, however, the dissent erroneously focuses on subsidiary legal issues instead of the order or judgment itself. In the May 18 order, the circuit court issued a judgment denying some of the the relief the State sought in its initial motion (*i.e.*, it refused to admit 8 of the 14 statements proffered by the State). Thus, the State could have moved the court to reconsider its judgment as to those statements. In support of such a motion, the State could have raised any legal arguments previously raised in support of its initial motion, including the common law argument not addressed in the May 18 order. Contrary to the dissent's assertion, litigants commonly file motions to reconsider when a circuit court issues an order that denies relief on one ground but fails to address an alternative ground for relief that the litigant had raised in its initial motion. See, *e.g.*, *CSM Insurance Building, Ltd. v. Ansvar America Insurance Co.*, 272 Ill. App. 3d 319, 321 (1995) (noting that the defendant had filed a motion to reconsider the circuit court's denial of its motion to dismiss because the court's order did not address one of the grounds asserted in the initial motion); see also *People v. R.J. Reynolds Tobacco Co.*, 2011 IL App (1st) 101736, ¶ 14 (noting that the State moved the circuit court to reconsider its order ruling that the defendant had not violated a master settlement agreement where the court failed to rule on a pertinent legal issue).

¶ 47    In the alternative, the dissent suggests that, even if the *Taylor* rule does apply, the State should nevertheless be allowed to challenge the circuit court's May 18 order because the order contravenes our supreme court's holding in *Hanson* and is therefore "manifestly erroneous." *Infra* ¶ 114; see also *infra* ¶¶ 115-17. In support of this suggestion, the dissent cites cases recognizing an exception to the law-of-the-case doctrine "when the supreme court, following the first appeal, makes a contrary ruling on the precise issue of law on which the appellate court based its first opinion." However, those cases do not support the dissent's position. As shown above, *Hanson* did not effect any material change in the common law doctrine of forfeiture by wrongdoing. Three years before *Hanson* was decided, the supreme court ruled that Illinois's common law doctrine of forfeiture by wrongdoing was "coextensive with" Federal Rule 804(b)(6), which is a hearsay exception that has never required a showing of reliability as a condition for admissibility. Thus, even assuming *arguendo* that the law-of-the-case principles cited by the dissent applied here, they could not justify an untimely reconsideration of the May 18 order.

¶ 48    Moreover, the fact that the May 18 order is arguably in tension with the Illinois common law of forfeiture by wrongdoing as articulated by the supreme court in *Stechly* and *Hanson* does not render the order nonbinding under the *Taylor* rule. As noted above, the *Taylor* rule "most resembles [the doctrine of] *res judicata*" (*Williams*, 138 Ill. 2d at 392; see also *id*. at 393) which "is not dependent upon the correctness of the judgment *** on which it is based" (*People v. Kidd*, 398 Ill. 405, 410 (1947)). Even a "manifestly erroneous" judgement issued by a court of competent jurisdiction "is binding upon all parties and privies until it is reversed or set aside." *Id*. at 409; see also *Pierog v. H.F. Karl Contractors, Inc.*, 39 Ill. App. 3d 1057, 1060 (1976) ("The *res judicata* effect of a prior judgment is not mitigated by the fact that it rests upon an erroneous view of the law; nor is the value of a plea of *res judicata* determined by the reasons given by a court in support of the prior judgment."). Thus, if a party fails to timely appeal a valid but erroneous judgment entered against it, *res judicata* bars re-litigation of any issues that were raised or could have been raised below. See, *e.g.*, *Patzner v. Baise*, 144 Ill. App. 3d 42, 44 (1986). Because the *Taylor* rule's "closest analogue" is *res judicata*, the same principle should apply here. See *Williams*, 138 Ill. 2d at 390 (citing *Harris v. Chicago House Wrecking Co.*, 314 Ill. 500 (1924) for the proposition that an unappealed order binds a party "no matter how erroneous it might have been at the time it was entered"). The *Taylor* rule would be meaningless if the preclusive effect it affords could be avoided based merely on a claim that the circuit court's order involved legal error.

¶ 49                                B. Rule 606

¶ 50    The State also argues, however, that its failure to file a timely appeal should be excused under Supreme Court Rule 606. Rule 606 addresses the perfection of appeals in criminal cases. Rule 606(b) provides that a notice of appeal must be filed within 30 days after the entry of the judgment or order appealed from or, if a motion for reconsideration is "timely" filed in the circuit court, within 30 days after the entry of the order disposing of the motion. Ill. S. Ct. R. 606(b) (eff. Jan. 1, 1970); *People v. Marker*, 233 Ill. 2d 158, 168-78 (2009). This rule applies to interlocutory appeals brought by the State under Rule 604(a). *Marker*,

233 Ill. 2d at 168-78 (holding that State's motion to reconsider the circuit court's interlocutory order suppressing evidence, which was filed within 30 days of the issuance of the suppression order, tolled the 30-day period for filing a notice of appeal under Rule 606(b)). Rule 606(c) provides for extensions of time to file notices of appeal in certain circumstances. Where the appellant files a notice of appeal within 30 days of the expiration of the time for filing a notice of appeal, as the State has done here, Rule 606(c) provides that the reviewing court may allow a late notice of appeal to be filed if the appellant files a motion with the court that is "supported by a showing of reasonable excuse for failing to file a notice of appeal on time." Ill. S. Ct. R. 606(c) (eff. July 1, 1971).

¶ 51    Rule 606 cannot excuse the State's failure to file a timely appeal in this case. First, the State's June 30 motion to reconsider did not toll the 30-day deadline for filing a notice of appeal under Rule 606(b) because, as noted above, that motion was not timely. Second, the State is not entitled to file a late notice of appeal under Rule 606(c) because the State has failed to show a "reasonable excuse" for its untimely appeal. The only excuse that the State offers for its tardiness is its claim that *Hanson* changed the common law doctrine of forfeiture by wrongdoing. As shown above, however, that claim is unsupportable.[13] Thus, the State may not invoke Rule 606(c) in this case.

¶ 52    The fact that the supreme court denied the defendant's motion for a supervisory order which sought to vacate this court's ruling allowing the State to file a late notice of interlocutory appeal under Rule 606(c) is of no consequence. "[The] supreme court's denial of a motion for a supervisory order does not have the effect of a ruling on any issue, nor does it support the decision of the lower court." *People ex rel. Madigan v. Illinois Commerce Comm'n*, 407 Ill. App. 3d 207, 218 (2010); see also *Roth v. St. Elizabeth's Hospital*, 241 Ill. App. 3d 407, 417 (1993) (reversing the circuit court's ruling and rejecting the circuit court's finding that the supreme court's denial of the appellant's motion for supervisory order supported the circuit court's ruling and decided the matter at issue). Moreover, it would be particularly inappropriate to assume that the supreme court decided the merits of the jurisdictional issue raised by the defendant's motion in this case because the State urged the supreme court to reject the defendant's motion for reasons other than the merits of the jurisdictional issue; for example, the State argued that the defendant's motion should be denied because the defendant had sought the wrong remedy and because he had failed to provide a proper supporting record to the supreme court. Thus, there is no reasonable basis to conclude that the supreme court's denial of the defendant's motion was a determination

---

[13]In cases involving interlocutory appeals brought by the State, Rule 606(c) must be read in concert with Rule 604(a)(1) and the cases construing that rule. As noted above, the supreme court decisions construing Rule 604(a)(1) hold that the State may file a late motion to reconsider a circuit court's order suppressing evidence and obtain interlocutory appellate review outside the 30-day deadline only if it can show "a material change in the facts that could not have been presented earlier with due diligence." *Holmes*, 235 Ill. 2d at 61, 67; see also *Williams*, 138 Ill. 2d at 394. Thus, where the State files an untimely interlocutory appeal of a circuit court's suppression order, as here, the State can show a "reasonable excuse" for its untimely appeal under Rule 606(c) only if it can show a material change in the facts that could not have been presented earlier with due diligence. As shown above, the State has failed to make such a showing.

of the merits. In any event, the State notes in its reply brief that it "do[es] not dispute defendant's right to request that this Court revisit the jurisdictional issue."

¶ 53    Accordingly, the State may not invoke Rule 606(c) to save its untimely appeal in this case. Although we initially granted the State leave to file a late notice of appeal, we have a continuing obligation to review our own jurisdiction over any matter before us. This obligation includes the duty to reconsider the question of our jurisdiction if our earlier ruling finding jurisdiction appears to be erroneous. *Fair Automotive Repair, Inc. v. Car-X Service Systems, Inc.*, 128 Ill. App. 3d 763, 773 (1984). Upon further review, we conclude that Rule 606(c) cannot cure the jurisdictional defect in this case. Because the *Taylor* rule operates to bar the State's appeal of the circuit court's order refusing to admit certain hearsay statements and the State has shown no "reasonable excuse" for its untimely appeal, we lack jurisdiction and appeal No. 3-10-0514 must be dismissed.

¶ 54                      C. "Suppression" Under Rule 604(a)(1)

¶ 55    There is an additional potential jurisdictional concern that bears mentioning. Although we do not decide the issue, we note that the circuit court's exclusion of some of the eight hearsay statements at issue might not amount to the "suppression of evidence" under Rule 604(a)(1). In pertinent part, Rule 604(a)(1) provides that "[i]n criminal cases the State may appeal only from an order or judgment the substantive effect of which results in *** suppressing evidence." Ill. S. Ct. R. 604(a)(1) (eff. July 1, 1969). Whether an order has the substantive effect of suppressing evidence is a jurisdictional issue which the reviewing court must decide. *In re K.E.F.*, 235 Ill. 2d 530, 537 (2009); *People v. Truitt*, 175 Ill. 2d 148, 151-52 (1997), *abrogated on other grounds, People v. Miller*, 202 Ill. 2d 328 (2002). In making this determination, we do not defer to the parties or the circuit court. *In re K.E.F.*, 235 Ill. 2d at 538. An order has the substantive effect of suppressing evidence where it prevents information from being presented to the jury. *In re K.E.F.*, 235 Ill. 2d at 538; *Truitt*, 175 Ill. 2d at 152. Thus, if the information excluded by the circuit court could be presented to the jury in some other manner, then the exclusion does not have the substantive effect of suppressing evidence under Rule 604(a). *In re K.E.F.*, 235 Ill. 2d at 538; *Truitt*, 175 Ill. 2d at 152; *People v. Baltimore*, 381 Ill. App. 3d 115, 124-25 (2008). The reviewing court lacks jurisdiction to hear an interlocutory appeal in such cases. *Truitt*, 175 Ill. 2d at 153.

¶ 56    Here, the content of at least some of the hearsay statements that the circuit court excluded can be presented to the jury in another manner because other statements that the court found admissible express the same information. For example, the circuit court excluded a statement which Stacy allegedly made to Scott Rossetto regarding her alleged encounter with the defendant on the night that Kathleen died. However, Stacy allegedly made a similar statement to her pastor in which she recounted the same incident in greater detail. The court found the latter statement admissible under the statute. In addition, the circuit court excluded a statement that Kathleen allegedly made to Kristen Anderson regarding a confrontation between Kathleen and the defendant that allegedly took place in July 2002. However, Kathleen told the same story in far greater detail in her letter to the Will County State's Attorney and in her written report of the incident to the Bolingbrook police,

both of which the circuit court found admissible under the statute.[14] Thus, the circuit court's exclusion of Stacy's alleged statement to Rossetto and Kathleen's alleged statement to Anderson arguably does not have the substantive effect of suppressing evidence under Rule 604(a).

¶ 57                    II. ADMISSIBILITY OF OTHER-CRIMES EVIDENCE

¶ 58        In appeal Nos. 3-10-0515 and 3-10-0550, the State argues that the circuit court erred when it denied the State's motion *in limine* with regard to other-crimes evidence. Specifically, the State contends that the court erroneously excluded the testimony of Eric Peterson, Anna Doman, and Victoria Connolly.

¶ 59        The question of whether other-crimes evidence is admissible is a matter within the circuit court's discretion. *People v. Dabbs*, 239 Ill. 2d 277, 284 (2010). We review the court's ruling on the admissibility of other-crimes evidence with deference (*People v. Donoho*, 204 Ill. 2d 159, 186 (2003)), and we will not disturb that ruling absent an abuse of discretion (*Dabbs*, 239 Ill. 2d at 284)). A trial court abuses its discretion when its ruling is "arbitrary, fanciful, unreasonable," or when "no reasonable [person] would take the view adopted by the trial court." (Internal quotation marks omitted.) *People v. Illgen*, 145 Ill. 2d 353, 364 (1991).

¶ 60        At common law, other-crimes evidence is admissible only if it is relevant to matters other than the defendant's propensity to commit crimes, such as the motive and intent of the accused. *Dabbs*, 239 Ill. 2d at 284-85; *Illgen*, 145 Ill. 2d at 364; see also Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). However, Section 115-7.4 of the Code (725 ILCS 5/115-7.4 (West 2008)) abrogates the common law rule in prosecutions for certain crimes of domestic violence. *Dabbs*, 239 Ill. 2d at 284, 288. In such cases, evidence of the defendant's commission of another offense or offenses of domestic violence is admissible and "may be considered for its bearing on *any matter to which it is relevant*" (emphasis added) (725 ILCS 5/115-7.4 (West 2008)), including the defendant's propensity to commit crimes of domestic violence (*Dabbs*, 239 Ill. 2d at 291, 295). Thus, in domestic violence cases, if other-crimes evidence is relevant to show the defendant's propensity to commit such crimes, the evidence will be excluded only if its prejudicial effect outweighs its probative value. *Dabbs*, 239 Ill. 2d at 291. Evidence that the defendant has committed other offenses of domestic violence is admissible under section 115-7.4 whether it relates to the same victim or other victims. *Dabbs*, 239 Ill. 2d at 293-94.

¶ 61        However, evidence of prior acts of domestic violence may not be admitted under section 115-7.4 if the probative value of the evidence is substantially outweighed by the risk of undue prejudice to the defendant. *Dabbs*, 239 Ill. 2d at 291. The same limitation applies under the common law. See, *e.g.*, *People v. Turner*, 373 Ill. App. 3d 121, 127 (2007); *People v. Smith*, 236 Ill. App. 3d 1060, 1062 (1992). In weighing the probative value of other crimes

---

[14]The similarities between the admitted statements and the excluded statements are readily apparent when the content of each statement is examined and compared. As noted above, however, we have chosen not to reveal the content of these statements because the trial record has been placed under seal to prevent tainting of the jury pool.

evidence against its potential to cause undue prejudice under section 115-7.4, the court may consider "the proximity in time to the charged or predicate offense," "the degree of factual similarity to the charged or predicate offense," and "other relevant facts and circumstances." 725 ILCS 5/115-7.4 (West 2008).

¶ 62    In this case, the State argued that the testimony of Eric Peterson, Anna Doman, and Victoria Connolly regarding the defendant's alleged prior crimes was admissible under the common law to show the defendant's motive and intent, and was admissible under section 115-7.4 to show the defendant's propensity to commit crimes of domestic violence. In excluding this testimony, the circuit court focused on the fact that the alleged other crimes occurred several years before the charged offense. In finding that the alleged prior offenses were too remote in time, the court implicitly found that the prejudicial effect of the State's other-crimes evidence outweighed its probative value.

¶ 63    "We ordinarily presume that the trial judge knows and follows the law unless the record indicates otherwise." *People v. Gaultney*, 174 Ill. 2d 410, 420 (1996). While "the admissibility of other-crimes evidence should not, and indeed cannot, be controlled solely by the number of years that have elapsed between the prior offense and the crime charged" (*Illgen*, 145 Ill. 2d at 370), the fact that the court only mentioned remoteness when it excluded the evidence is not an indication that the court performed a truncated or incomplete analysis. The court stated it had read the applicable case law when it ruled on these matters under the statute. The court simply found remoteness to be the overriding factor. We have found nothing in the record to rebut the presumption that the court knew and followed the applicable law.

¶ 64    Moreover, even if the circuit court failed to consider each of the factors for determining whether alleged other crimes may be admitted under section 115-7.4 or under the common law, we may affirm if the court's decision is supported by the record. *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 97 (1995) (noting that a reviewing court "can sustain the decision of a lower court on any grounds which are called for by the record, regardless of whether the lower court relied on those grounds and regardless of whether the lower court's reasoning was correct"); *People v. Reed*, 361 Ill. App. 3d 995, 1000 (2005) ("[w]e review the trial court's judgment, not its rationale," and "[w]e can affirm for any reason the record supports"). Thus, regardless of the reasoning employed by the circuit court, the ultimate issue is whether it would be an abuse of discretion to conclude that the unduly prejudicial effect of defendant's alleged prior bad acts outweighed their probative value to show motive, intent, or propensity to commit crimes of domestic violence. See 725 ILCS 5/115-7.4(b) (West 2008); *People v. Smith*, 406 Ill. App. 3d 747, 752 (2010); *People v. Taylor*, 383 Ill. App. 3d 591, 595-96 (2008).

¶ 65    The circuit court did not abuse its discretion in this case. Although the alleged prior incidents shared some factual similarities to the charged conduct and were arguably relevant to show the defendant's motive, intent, and propensity, all of these incidents occurred many years before the charged offense. The 1993 incident occurred approximately 11 years before the charged offense and the incidents involving Connolly occurred between approximately 12 and 22 years before the charged offense. Although the remoteness of these alleged prior incidents is not dispositive (*Illgen*, 145 Ill. 2d at 370), it is a relevant consideration that

diminishes the probative value of this evidence and weighs against its admission. 725 ILCS 5/115-7.4(b)(1) (West 2008); see also *Illgen*, 145 Ill. 2d at 370 ("other offenses which are close in time to the charged offense will have more probative value than those which are remote"); *People v. Ward*, 101 Ill. 2d 443, 455 (1984) (noting that a trial court may reject offered evidence on grounds of irrelevancy if it has "little probative value due to its remoteness"). This is particularly true in regard to Connolly's testimony, which concerned alleged incidents that were extremely remote in time from the charged offense.

¶ 66       Moreover, some of the alleged prior incidents are factually dissimilar from the charged conduct in some material respects. For example, unlike the alleged conduct at issue in this case, the defendant's alleged abuse of Kathleen in 1993 did not take place while a divorce proceeding was pending and did not involve violence or threats used to intimidate Kathleen into dropping her legal claims. Moreover, the alleged abuse of Connolly involved a different victim. Although these factual differences, standing alone, do not render the proffered other-crimes evidence inadmissible (*Dabbs*, 239 Ill. 2d at 293; *Illgen*, 145 Ill. 2d at 373), they diminish the probative value of the evidence and augment its prejudicial impact. See *People v. Wilson*, 214 Ill. 2d 127, 142 (2005) ("As factual similarities increase, so does the relevance or probative value."); *Smith*, 406 Ill. App. 3d at 754 ("as the number of dissimilarities increase, so does the prejudicial effect of the other-crimes evidence" (internal quotation marks omitted)); see generally 725 ILCS 5/115-7.4(b)(2) (West 2008). Both of these effects are compounded by the remoteness of the alleged prior incidents. *Smith*, 406 Ill. App. 3d at 754. Accordingly, it was not an abuse of discretion for the circuit court to conclude that the unduly prejudicial effect of the defendant's alleged prior acts outweighed their probative value to show motive, intent, or propensity.

¶ 67       Under the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the circuit court. *Donoho*, 204 Ill. 2d at 186; *Illgen*, 145 Ill. 2d at 371. The reviewing court must give "deference to the trial court's ability to evaluate the impact of the evidence on the jury." *Donono*, 204 Ill. 2d at 186 (citing *Illgen*, 145 Ill. 2d at 375-76). When applying this deferential standard, we must uphold the trial court's decision even if "reasonable minds [can] differ" about whether such evidence is admissible. *Illgen*, 145 Ill. 2d at 375-76. As noted above, we may reverse only if the trial court's decision was "arbitrary," "fanciful," or "unreasonable," such that "no reasonable [person] would take the view adopted by the trial court." (Internal quotation marks omitted.) *Illgen*, 145 Ill. 2d at 364. The circuit court's ruling in this case is not reversible under this highly deferential standard. Although reasonable minds might disagree on whether the State's motion *in limine* should have been granted at this stage of the proceedings, we cannot say that the court's pretrial ruling rose to the level of an abuse of discretion. See *Smith*, 406 Ill. App. 3d at 751.

¶ 68                    III. ADMISSIBILITY OF PROPOSED EXPERT TESTIMONY

¶ 69       In appeal Nos. 3-10-0513 and 3-10-0546, the State argues that the circuit court erred when it prohibited Diane Panos from offering expert opinions as to: (1) what the judge in the divorce case would have ultimately ruled at the marital property distribution proceeding had Kathleen lived; and (2) what the defendant's attorney in that case would have advised him to expect to occur.

¶ 70 "The permissive use of expert testimony is favored in any case where the testimony would assist the jury in its understanding of the facts." *Sohaey v. Van Cura*, 240 Ill. App. 3d 266, 283 (1992), *aff'd*, 158 Ill. 2d 375 (1994); see also *People v. Jordan*, 103 Ill. 2d 192, 208 (1984). The decision whether evidence is admissible is a matter within the circuit court's discretion (*People v. Williams*, 188 Ill. 2d 365, 369 (1999)), and we review those rulings with deference (*People v. Caffey*, 205 Ill. 2d 52, 89 (2001)). We will not disturb the court's decision on a motion *in limine* absent an abuse of discretion. *Williams*, 188 Ill. 2d at 369. An abuse of discretion occurs when the circuit court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the court. *Caffey*, 205 Ill. 2d at 89.

¶ 71 In this case, the circuit court did not abuse its discretion when it limited Panos's proposed expert testimony. Experts may not testify as to statutory interpretation or legal conclusions. *LID Associates v. Dolan*, 324 Ill. App. 3d 1047, 1058 (2001); see also *Christou v. Arlington Park-Washington Park Race Tracks Corp.*, 104 Ill. App. 3d 257, 261 (1982) (noting that not even attorneys can testify as experts as to statutory interpretation). Further, expert testimony that is based on speculation or conjecture will be excluded. *People v. Patel*, 366 Ill. App. 3d 255, 272 (2006). Here, Panos's opinion on how the judge would have ruled was speculative and therefore not the proper subject of expert testimony.

¶ 72 Moreover, the State's argument that Panos's excluded testimony was admissible because it was "representative of what a reasonably competent divorce lawyer would have advised defendant to expect to occur" is unavailing. As the circuit court noted, this is not a legal malpractice case in which such testimony may be relevant. While what the defendant in fact knew about the divorce case and when he knew it would arguably be relevant to the defendant's motive and intent in this case, Panos is not an expert on what the defendant in fact knew. It appears that the court indicated it would allow Panos to testify regarding the issues facing the parties in the divorce proceeding based on the "statutory scheme," which would include matters such as support, custody, property division, pensions, and financial issues under the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq.* (West 2008)). However, the inferences a fact finder could draw from that and the other relevant evidence as to the defendant's motive and intent are not the proper subject of expert testimony.

¶ 73 For these reasons, we hold that the circuit court did not abuse its discretion when it prohibited Diane Panos from testifying as to: (1) what the judge in the divorce case would have ultimately ruled at the marital property distribution proceeding had Kathleen lived; and (2) what the defendant's attorney in that case would have advised him to expect to occur.

¶ 74                                     CONCLUSION

¶ 75 The State's interlocutory appeal of the circuit court's refusal to admit 8 of the 14 hearsay statements offered by the State under the common law doctrine of forfeiture by wrongdoing was untimely filed. The State has not shown any material change in facts that would justify an untimely filing under Supreme Court Rule 604(a)(1) or 606(c). Accordingly, we lack jurisdiction to hear the State's appeal of the circuit court's ruling on this issue, and that appeal is dismissed.

¶ 76 Moreover, although reasonable minds may disagree on whether the circuit court should have granted the State's motion *in limine* to admit evidence of other crimes allegedly committed by the defendant, our review of the circuit court's ruling on the issue is extremely limited under the law. We may not substitute our judgment for that of the circuit court, and we may reverse only if we find that the circuit court abused its discretion. That occurs only when the circuit court's ruling was so arbitrary and unreasonable that no reasonable person would take the view adopted by the circuit court. Here, the circuit court found that the alleged other crimes at issue were excessively remote in time. Moreover, the alleged prior offenses were unlike the charged offense in some important respects. Taken together, these facts diminish the probative value of the evidence and increase the likelihood that the admission of the evidence would unfairly prejudice the defendant. Thus, the circuit court's decision to exclude the evidence was not arbitrary or unreasonable, and its ruling is not reversible under the highly deferential abuse of discretion standard.

¶ 77 Finally, we uphold the circuit court's decision prohibiting attorney Diane Panos from testifying as to what the judge in the divorce case would have ultimately ruled had Kathleen lived and what the defendant's attorney in that case would have advised him. Those matters are speculative and are not the proper subject of expert testimony. Thus, the circuit court's refusal to allow Panos to testify as an expert on these matters was correct and was not an abuse of discretion.

¶ 78 No. 3-10-0514, Dismissed for lack of jurisdiction.

¶ 79 Nos. 3-10-0515 and 3-10-0550, Affirmed; cause remanded.

¶ 80 Nos. 3-10-0513 and 3-10-0546, Affirmed; cause remanded.

¶ 81 PRESIDING JUSTICE CARTER, concurring in part and dissenting in part:

¶ 82 I concur with the result that the circuit court did not abuse its discretion when it excluded the State's other-crimes evidence, but I do not join in the entirety of the majority's analysis on that issue. I disagree with the majority's independent assessment of the strength of the evidence (*supra* ¶¶ 64-66) because, arguably, the incidents are relevant to show motive and intent. I concur with the result and supporting analysis that the circuit court did not abuse its discretion when it limited the expert testimony of Diane Panos. However, I respectfully dissent from the majority's conclusion that we lack jurisdiction to hear the State's appeal with regard to the admissibility of the eight hearsay statements of Kathleen Savio and Stacy Peterson under the forfeiture by wrongdoing doctrine.

¶ 83 What divides this panel on the jurisdiction issue in this case is a difference of opinion regarding the nature of this appeal and the extent and reach of the rule from *People v. Taylor*, 50 Ill. 2d 136 (1971). I strongly disagree with the majority's assertion that the *Taylor* rule applies, as I believe the State filed a timely motion on June 30 and a timely appeal from the circuit court's July 6 order. Furthermore, even if the *Taylor* rule did apply, I do not believe the rule should operate in the formalistic manner suggested by the majority. I do not agree with the majority's suggestion that the State and the court should be bound at trial by a manifestly erroneous ruling that contravenes a June 2010 decision from our supreme court

(*People v. Hanson*, 238 Ill. 2d 74, 99 (2010)). In addition, I would hold that the eight hearsay statements are admissible under the common law doctrine of forfeiture by wrongdoing, as codified in Illinois Rule of Evidence 804(b)(5), because reliability is not a proper basis for excluding the statements. See *Hanson*, 238 Ill. 2d at 99.

¶ 84                                I. Jurisdiction Under Rule 604(a)(1)

¶ 85    The majority concludes that pursuant to the *Taylor* rule, the State had to file its notice of appeal, without exception, within 30 days of the circuit court's May 18 order because the State failed to file a timely motion to reconsider. *Supra* ¶ 31. The majority's ruling is erroneous and irremediably flawed because it assumes a proposition that it cannot support–namely, that the order at issue is the May 18 order.

¶ 86    To understand why the majority's ruling on this issue is erroneous, it is necessary to understand the procedural history of this case. On January 4, 2010, the State filed a pretrial motion to admit 15 hearsay statements under section 115-10.6 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10.6 (West 2008)) and under the common law doctrine of forfeiture by wrongdoing. In a written order dated May 18, 2010, the circuit court ruled, according to the statutory criteria, that eight of the statements were inadmissible because they lacked additional indicia of reliability.[15] The May 18 order was silent with regard to the State's common law argument. On May 28, 2010, the defendant filed a motion in which it asked the court to clarify its ruling; in particular, whether the court ruled on the State's common law argument. In response, the court stated, "I didn't even get to that. There was no request as to any of the others. I ruled strictly pursuant–there was a hearing pursuant to the statute." On June 30, 2010, the State filed a motion to admit the eight excluded statements under the common law doctrine of forfeiture by wrongdoing and under Federal Rule of Evidence 804(b)(6). Specifically, the State requested the court to:

   "reconsider its decision to deny the People's request to admit the hearsay statements previously not admitted under the statutory criteria, and that this Court find that the hearsay statements are admissible at trial under the common law doctrine of forfeiture by wrongdoing and Federal Rule of Evidence 804(b)(6).

   WHEREFORE, the People request this Court to reconsider its ruling on the statements previously excluded under the statutory criteria, and, pursuant to the common law doctrine of forfeiture by wrongdoing and Federal Rule of Evidence 804(b)(6), admit those statements at trial."

¶ 87    On July 6, 2010, the circuit court denied the State's motion, which it construed as a motion to reconsider the May 18 order. Two days later, the court clarified that it so ruled because it believed the statute codified, and therefore supplanted, the common law doctrine of forfeiture by wrongdoing.

¶ 88    On July 7, 2010, the State filed a notice of appeal from the circuit court's May 18 and July 6 orders. The notice of appeal indicated that the State was appealing from the May 18

---

[15]The State withdrew one of the statements at the hearing and the court admitted the remaining six statements.

order and the July 6 denial of a motion to reconsider. On July 23, 2010, the State amended the notice of appeal and indicated that it was appealing from the May 18 order and the July 6 denial of the State's motion to admit statements under the common law doctrine of forfeiture by wrongdoing.[16]

¶ 89    In arriving at its ruling on this issue, the majority operates from the assumption that "[t]he order at issue in this case was issued by the circuit court on May 18, 2010." *Supra* ¶ 31. In interlocutory appeals such as the instant case, our jurisdiction to hear the appeal hinges on whether the State filed a timely notice of appeal from a ruling of the circuit court. Ill. S. Ct. R. 604(a)(1) (eff. July 1, 2006); R. 606(b) (eff. Mar. 20, 2009); see also *People v. Hubbard*, 170 Ill. App. 3d 572, 575 (1988) (30-day period in Rule 606(b) applies to interlocutory appeals by the State). There are two orders of the circuit court that the State referenced in its notice of appeal in No. 3-10-0514: May 18, 2010, and July 6, 2010. Resolution of the jurisdiction question therefore rests on which of these orders is at issue on appeal. The majority's assumption that the May 18 order is the order at issue is erroneous, as it is incompatible with the facts. The State has not requested this court to review the circuit court's May 18 order, which was based solely on the statutory criteria. Rather, the State seeks review of the court's July 6 order in which it denied the State's June 30 motion, which requested the court to rule on its common law argument.

¶ 90    The majority attempts to downplay the importance of the circuit court's failure to rule on the State's common law argument on May 18 when it claims, without citation to authority:

> "[T]he court's May 18, 2010, order did not address the common law rule or reserve ruling on that issue. Ten days later, in response to the defendant's motion for clarification, the circuit court confirmed that it did not consider the common law doctrine in rendering its decision. For that reason alone, the State could have appealed or moved to reconsider the order within 30 days." *Supra* ¶ 37.

I submit that the majority cites no authority because there is absolutely no support in the law for this claim. Our supreme court has acknowledged for over 100 years that "[t]he rule in this state is clear and well settled that a party litigant can only complain where he has objected and obtained a ruling and excepted to it, or excepted to the refusal of the court to act." *Lipsey v. People*, 227 Ill. 364, 373 (1907). By the majority's own acknowledgment, the court did not rule on the State's common law argument on May 18. *Supra* ¶¶ 12, 37, 39. Thus, the majority's claim that "the State could have appealed or moved to reconsider the [May 18] order within 30 days" (*supra* ¶ 37) is incorrect. An appeal from the circuit court's failure to rule on the State's common law argument would have resulted in the forfeiture of the common law issue on appeal. See *Lipsey*, 227 Ill. at 373; see also *People v. Urdiales*, 225 Ill. 2d 354, 425 (2007) ("[a] movant has the responsibility to obtain a ruling on his motion if he is to avoid forfeiture on appeal").

¶ 91    The majority repeatedly claims throughout its opinion that the State's June 30 motion

---

[16]On August 9, the State filed a late notice of appeal from what it described as the May 18 order and the July 6 denial of the State's motion to admit statements under the common law doctrine of forfeiture by wrongdoing.

was nothing more than a motion to reconsider the May 18 order (*supra* ¶¶ 13, 14, 31, 40, 42, 46, 51) and emphasizes that the circuit court construed the motion as a motion to reconsider in its July 6 order (*supra* ¶¶ 14, 40). The record indicates that the court construed the motion as a motion to reconsider because it believed the statute codified, and therefore supplanted, the common law doctrine of forfeiture by wrongdoing. Even if this was a correct assumption–which it was not–the fact remains that the court specifically *refused* to allow the admission of the evidence pursuant to the State's common law argument on July 6 by its denial of the State's June 30 motion, which is distinctly different than its *failure* to rule on the issue on May 18. See *Lipsey*, 227 Ill. at 373; *Urdiales*, 225 Ill. 2d at 425.

¶ 92      The majority's emphasis on "reconsideration" ignores the substance of the State's June 30 motion, which is what determines a motion's character. See, *e.g.*, *People v. Harper*, 345 Ill. App. 3d 276, 284 (2003). The State's June 30 motion sought, for a second time, the circuit court's ruling on its common law argument because the court ignored that argument on May 18. The State's approach was appropriate under the circumstances. See generally *Urdiales*, 225 Ill. 2d at 425 ("[a] movant has the responsibility to obtain a ruling on his motion if he is to avoid forfeiture on appeal"); see also *Rinesmith v. Sterling*, 293 Ill. App. 3d 344, 348 (1997) (duty is on the party to obtain a separate ruling as to each portion of an offer of proof to preserve any error); *People v. Beasley*, 307 Ill. App. 3d 200, 207 (1999) (" 'trial court does not have a duty to consider all possible theories; rather, its task is to rule on the basis of the theories presented' " (quoting *People v. Hamilton*, 283 Ill. App. 3d 854, 861 (1996) *rev'd on other grounds*, 179 Ill. 2d 319 (1997))).

¶ 93      The State's June 30 motion as to the common law basis could not have been a motion to reconsider the May 18 order, as the circuit court could not reconsider something that it never considered in the first place. Thus, the majority's characterization of the State's June 30 motion as a motion to reconsider the May 18 order contravenes the actual circumstances of this case.

¶ 94      In addition, the majority improperly extends the principle that "the *Taylor* rule applies to prior orders *per se* and is therefore not limited to issues actually considered, but also covers any issues that could have been raised in the earlier proceeding" (*People v. Holmes*, 235 Ill. 2d 59, 67 (2009)), to the very different circumstances presented by this case. Here, we are not faced with a situation in which an issue either was actually considered or could have been raised, but was not. Rather, this case involves a situation in which the State raised the common law issue, but the circuit court failed to rule on that issue. The State raised the issue again on June 30, and the court finally decided it on July 6 by denying the motion.

¶ 95      Thus, the majority has no basis to equate the instant circumstance, in which an issue was raised but was ignored by the circuit court, with a circumstance in which an issue is actually considered or could have been raised, but was not (see, *e.g.*, *Holmes*, 235 Ill. 2d at 67-68). The four cases cited by the majority in this regard do not stand for the proposition that the *Taylor* rule prevents the State from attempting to secure a ruling on an issue raised but ignored by the circuit court. See *Holmes*, 235 Ill. 2d at 68 (State attempted to raise an issue that could have been raised at the original suppression hearing); *People v. Williams*, 138 Ill. 2d 377, 396 (1990) (State's attenuation argument was not presented to the circuit court at the original suppression hearing); *People v. Daniels*, 346 Ill. App. 3d 350, 360 (2004) (defendant

attempted to raise an issue not raised at the original suppression hearing); *People v. Lawson*, 327 Ill. App. 3d 60, 67 (2001) (State attempted to raise issues not raised at the original suppression hearing). Thus, the aforementioned bar on issues actually considered or issues that could have been raised does not apply to this case.

¶ 96 In sum, the *Taylor* rule is inapplicable because the State's June 30 motion was a timely filed motion, as it sought to secure a ruling on the common law argument that the circuit court ignored on May 18. The court finally ruled, by its denial of the State's motion, on the State's common law argument on July 6. The State filed a notice of appeal from that ruling on July 7, then amended the notice of appeal on July 23. Thus, contrary to the majority's position, I would find that the State's notice of appeal was timely filed and therefore was sufficient to confer jurisdiction on this court over the July 6 order. Ill. S. Ct. R. 604(a)(1); R. 606(b); see also *Hubbard*, 170 Ill. App. 3d at 575 (30-day period in Rule 606(b) applies to interlocutory appeals by the State).

¶ 97 II. The Circuit Court's July 6 Ruling Was Manifestly Erroneous

¶ 98 The circuit court's July 6 ruling was a denial of a motion *in limine* filed on June 30. "Motions *in limine* are designed to call to the attention of a trial court, in advance of trial, some evidence which, because of its potentially prejudicial nature, cannot be discussed in the jury's presence until the court has determined it is admissible." *People v. Owen*, 299 Ill. App. 3d 818, 822 (1998). Motions *in limine* can be used by either the proponent or opponent of certain evidence; the former requests a ruling that the evidence is admissible at trial, while the latter requests a ruling that the evidence should be excluded at trial. *Owen*, 299 Ill. App. 3d at 822; see also Michael H. Graham, Graham's Handbook of Illinois Evidence § 103.9, at 44 (10th ed. 2010). Because motions *in limine* invoke the circuit court's inherent power to admit or exclude evidence, a court's decision thereon is typically reviewed for an abuse of discretion. *People v. Williams*, 188 Ill. 2d 365, 369 (1999). However, "[w]here a trial court's exercise of discretion has been frustrated by an erroneous rule of law," our review is *de novo*. *Williams*, 188 Ill. 2d at 369.

¶ 99 At the heart of the circuit court's July 6 order was its belief that section 115-10.6 of the Code codified, and therefore supplanted, the common law doctrine of forfeiture by wrongdoing. For the following reasons, the court erred as a matter of law when it so ruled.

¶ 100 At common law, the doctrine of forfeiture by wrongdoing provides a hearsay exception for "[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." Fed. R. Evid. 804(b)(6); *Giles v. California*, 554 U.S. 353, 367 (2008) (noting that Federal Rule of Evidence 804(b)(6) codified the common law doctrine of forfeiture by wrongdoing). In *Hanson*, our supreme court held that "the doctrine serves both as an exception to the hearsay rule and to extinguish confrontation clause claims." *Hanson*, 238 Ill. 2d at 97. In addition, our supreme court clarified that, "so long as the declarant's statements are relevant and otherwise admissible, statements admitted under the forfeiture by wrongdoing doctrine need not reflect additional indicia of reliability." *Hanson*, 238 Ill. 2d at 99.

¶ 101 In contrast to the forfeiture by wrongdoing doctrine, as clarified by *Hanson*, reliability is an element of the statutory hearsay exception for the intentional murder of a witness (725

ILCS 5/115-10.6(e)(2) (West 2008)), under which the circuit court ruled on May 18. Thus, the statute stands in direct conflict with the common law doctrine of forfeiture by wrongdoing in Illinois. See *Hanson*, 238 Ill. 2d at 99.

¶ 102     On September 27, 2010, our supreme court adopted the Illinois Rules of Evidence, which became effective in Illinois courts on January 1, 2011. The Illinois Rules of Evidence codified and replaced the common law rules of evidence in this state, including the forfeiture by wrongdoing doctrine. Under Rule of Evidence 804(b)(5), a hearsay exception is provided for "[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." Ill. R. Evid. 804(b)(5) (eff. Jan. 1, 2011). Reliability is not an element of Rule of Evidence 804(b)(5). See *Hanson*, 238 Ill. 2d at 99.

¶ 103     Rule 101 states that "[a] statutory rule of evidence is effective unless in conflict with a rule or a decision of the Illinois Supreme Court." Ill. R. Evid. 101 (eff. Jan. 1, 2011). Thus, as a matter of separation of powers in Illinois, our supreme court has the ultimate authority to promulgate the manner by which evidence may be introduced into the courts. See *People v. Bond*, 405 Ill. App. 3d 499, 508-09 (2010). Applying Rule of Evidence 101 to this case, in light of the forfeiture by wrongdoing doctrine as it existed at common law, as it was clarified in Illinois in *Hanson*, and as it now exists in Rule of Evidence 804(b)(5), the conflict between section 115-10.6 of the Code and the forfeiture by wrongdoing doctrine must be resolved in favor of the promulgations of our supreme court. In this case, the circuit court believed that the statutory rule of evidence in section 115-10.6 of the Code supplanted the forfeiture by wrongdoing doctrine. As a matter of law, that decision was manifestly erroneous.

¶ 104     While the circuit court's exercise of discretion in excluding the eight hearsay statements was frustrated by a manifestly erroneous rule of law, the court nevertheless made the appropriate and necessary factual findings for the evidence to be admissible under Rule of Evidence 804(b)(5). That is, under the forfeiture by wrongdoing doctrine, the court found that the State proved by a preponderance of the evidence that: (1) the defendant murdered Kathleen and Stacy; and (2) he did so with the intent to make them unavailable as witnesses. Ill. R. Evid. 804(b)(5); see also *Hanson*, 238 Ill. 2d at 97-99. Thus, I would also hold that the statements are admissible under Rule of Evidence 804(b)(5), even though that holding would not be determinative of whether the statements would be otherwise admissible and in fact admitted at trial (Ill. R. Evid. 804(b)(5); see *People v. Dabbs*, 239 Ill. 2d 277, 287-88 (2010) (noting that just because evidence is admissible does not mean that it will in fact be admitted); see also *People v. Drum*, 321 Ill. App. 3d 1005, 1008 (2001) (final decision on evidentiary matters will be made by the circuit court during trial); see also Ill. R. Evid. 403 (eff. Jan. 1, 2011)).[17]

---

[17]It is also noteworthy that the six statements admitted by the circuit court under section 115-10.6 of the Code are not at issue on appeal. However, the admissibility of those statements is not negated by the fact that the court also considered reliability in issuing its decision. Without the consideration of reliability, those statements would also be admissible under Rule of Evidence 804(b)(5).

¶ 105          III. History of the Forfeiture by Wrongdoing Doctrine in Illinois

¶ 106    I also disagree with the majority's position regarding the historical reach of the common law doctrine of forfeiture by wrongdoing in Illinois evidence, including its claim that *Hanson* did not represent a change in the law. Contrary to the majority position, the doctrine was not deeply embedded into the tissues of Illinois evidence law prior to *People v. Stechly*, 225 Ill. 2d 246 (2007), and *Hanson*. The doctrine was first accepted in Illinois by the appellate court in *People v. Melchor*, 362 Ill. App. 3d 335, 345 (2005), *vacated & remanded on other grounds*, 226 Ill. 2d 24 (2007). Noteworthy for purposes of this discussion is that the *Melchor* court claimed that no Illinois case had adopted the federal version of the forfeiture by wrongdoing doctrine (Fed. R. Evid. 804(b)(6)) and its independent research had not disclosed any Illinois case that had addressed the forfeiture by wrongdoing doctrine. *Melchor*, 362 Ill. App. 3d at 345; see also *People v. Hampton*, 363 Ill. App. 3d 293, 301 (2005) (accepting the forfeiture by wrongdoing doctrine), *vacated in part on other grounds*, 225 Ill. 2d 238 (2007).

¶ 107    In fact, our supreme court declined to adopt the forfeiture by wrongdoing exception to hearsay as early as 1856 (*Bergen v. People*, 17 Ill. 426, 427-28 (1856)), despite its English common law roots dating back to 1666 (see *Lord Morley's Case*, 6 How. St. Tr. 769, 771 (H.L. 1666)). *Bergen* referenced an earlier version of the former-testimony hearsay exception when it indicated that if a witness testified at a former trial, and has since died, the witness's former testimony could be given into evidence. *Bergen*, 17 Ill. at 427. That principle is now expressed in Illinois Rule of Evidence 804(b)(1) and section 115-10.4 of the Code (725 ILCS 5/115-10.4 (West 2008)). The witness in *Bergen* was not dead; rather, the evidence indicated that the defendant had taken the witness out of the state to deprive the People of her testimony. Our supreme court stated:

> "Here, the witness was not dead, but beyond the jurisdiction of the court, by the procurement of the defendant; and we think the rules of evidence do not permit, in such a case, the admission of the testimony given on the former occasion. [Citations.] Some of the authorities hold that, in a criminal proceeding, this kind of evidence is not admissible, although the witness be dead; but it is not necessary for us here to decide this question. It is true, if a party in any case spirits away his adversary's witness, he ought not to profit thereby; or, at least, suitable penalties should be provided against such conduct, but it is for the legislature to correct the evil." *Bergen*, 17 Ill. at 427-28.[18]

¶ 108    In *Stechly*, our supreme court recognized and first accepted the forfeiture by wrongdoing doctrine. *Stechly*, 225 Ill. 2d at 268-78. Thus, arguably, the 1856 *Bergen* case was not overruled as precedential authority in relevant part until 2007. Then, three years later in *Hanson*, our supreme court expressly recognized that the doctrine was both an exception to the hearsay rule and it also extinguished confrontation clause issues. *Hanson*, 238 Ill. 2d at 97. Our supreme court also held, for the first time in Illinois law, that if statements are

---

[18]The *Bergen* decision is most frequently cited for the principle that corroboration of a defendant's extrajudicial confession is necessary to prove that a criminal offense occurred. See, *e.g.*, *People v. Sargent*, 239 Ill. 2d 166, 188 (2010).

relevant and otherwise admissible, the statements need not reflect additional indicia of reliability. *Hanson*, 238 Ill. 2d at 99.

¶ 109    Thus, I disagree with the majority's assertion that "it was clear long before *Hanson* that the common law doctrine of forfeiture by wrongdoing was a general hearsay exception in Illinois and that the admission of hearsay statements under the doctrine did not depend upon a showing of reliability." *Supra* ¶ 34. While it is true that *Stechly* held that Federal Rule of Evidence 804(b)(6) and the forfeiture by wrongdoing doctrine "are coextensive" (*Stechly*, 225 Ill. 2d at 272), I do not believe that *Stechly* can therefore be read as a blanket adoption of all of the developments of the doctrine at common law, including whether reliability is required.[19] Reliability was not at issue in *Stechly*, and it was not addressed in any Illinois case until our supreme court specifically addressed it in *Hanson* and held that it was not an element of the forfeiture by wrongdoing doctrine in Illinois (*Hanson*, 238 Ill. 2d at 99). Contrary to the majority's assertion, I believe that *Hanson* did in fact clarify the forfeiture by wrongdoing doctrine in Illinois.

¶ 110    The majority's discussion of the doctrine's history in the federal courts begs the question. A history of the common law doctrine of forfeiture by wrongdoing in the federal courts does not equate with the doctrine's history in Illinois. While the United States Supreme Court recognized the forfeiture by wrongdoing doctrine as early as 1878 in *Reynolds v. United States*, 98 U.S. 145, 158 (1878), our supreme court declined to adopt the doctrine in 1856 in *Bergen*, did not adopt it until 2007 in *Stechly*, and clarified it in 2010 in *Hanson*. The *Hanson* opinion, issued one week after the majority's alleged 30-day deadline had expired for the State to appeal the May 18 order, marked a material change in the forfeiture by wrongdoing doctrine in Illinois. The *Hanson* holding that reliability is not a required element of the doctrine was not accreted into precedent in the law of evidence in Illinois until the decision was issued. As such, the circuit court's reliance on reliability as a factor to be considered became manifestly erroneous.

¶ 111                    IV. Additional Disagreements With the Majority's Analysis

¶ 112    First, I submit that the majority's discussion that "the circuit court's exclusion of some of the eight hearsay statements at issue might not amount to the 'suppression of evidence' under Rule 604(a)(1)" (*supra* ¶ 55) is flawed because it misclassifies the evidence in this case. The majority states that, "[h]ere, the content of at least some of the hearsay statements

---

[19]Of the 24 states that have adopted a version of the forfeiture by wrongdoing doctrine, unanimity does not exist with regard to whether the doctrine requires reliability. See Anthony Bocchino & David Sonenshein, *Rule 804(b)(6)–The Illegitimate Child of the Failed Liaison Between the Hearsay Rule and Confrontation Clause*, 73 Mo. L. Rev. 41, 79 app. (2008) (California law requires reliability in "serious felony" cases, Arizona law is unclear, Maryland law requires reliability in civil cases, Massachusetts law is undecided, and Minnesota law might require reliability); see also James F. Flanagan, *Forfeiture by Wrongdoing and Those Who Acquiesce in Witness Intimidation: A Reach Exceeding Its Grasp and Other Problems With Federal Rule of Evidence 804(b)(6)*, 51 Drake L. Rev. 459, 519-26 (2003) (discussing the concerns about the reliability of the hearsay admitted under the misconduct exception).

that the [circuit] court excluded can be presented to the jury in another manner because other statements that the circuit court found admissible express the same information." *Supra* ¶ 56. In support of its claim, the majority cites to *In re K.E.F.*, 235 Ill. 2d 530 (2009), *People v. Truitt*, 175 Ill. 2d 148 (1997), *abrogated on other grounds by People v. Miller*, 202 Ill. 2d 328, 335 (2002); and *People v. Baltimore*, 381 Ill. App. 3d 115 (2008). I submit that the majority's citations to these cases are misleading. Each of those cases involved the *means* by which evidence was sought to be introduced. *K.E.F.*, 235 Ill. 2d at 540 (involving the choice of presenting one witness's testimony either live or through her previously recorded statement); *Truitt*, 175 Ill. 2d at 152 (involving the choice of presenting one witness's testimony either live or through a report the witness previously prepared); *Baltimore*, 381 Ill. App. 3d at 124 (involving the means by which the State sought to introduce a surveillance video). In contrast, this case does not involve the choice between forms in which to present evidence from one witness or one source. Rather, this case involves the testimony of different witnesses regarding separate conversations they had with the declarant about certain events. While those testimonies might be similar, they are not identical, as the majority suggests, and the question of whether the exclusion of those statements amounts to the suppression of evidence is not answered by the cases cited by the majority.

¶ 113　　Apparently, what is at issue for the majority in this regard is whether the evidence represents the needless presentation of cumulative evidence. See Ill. R. Evid. 403. Cumulative evidence can be excluded if repetition or time considerations outweigh the proffered evidence's incremental probative value. See *Maffett v. Bliss*, 329 Ill. App. 3d 562, 572-73 (2002); Graham, *supra*, § 403.1, at 206; see also *People v. Culbreath*, 343 Ill. App. 3d 998, 1004 (2003). I would disagree with any suggestion that these statements are needlessly cumulative and I submit that the circuit court's order did in fact suppress evidence.

¶ 114　　Second, even if the *Taylor* rule did apply–which I believe it does not–I do not accept the consequence of the majority's ruling on this issue that the State and the circuit court should be bound at trial by the circuit court's manifestly erroneous ruling. Our supreme court has not had this type of issue regarding manifestly erroneous rulings presented to it in the context of the *Taylor* rule and its progeny.

¶ 115　　In *Williams*, our supreme court stated that the *Taylor* rule is a "discrete rule of Illinois procedure, independent of such related doctrines as collateral estoppel, law of the case, or even *res judicata*. Of these three doctrines, the *Taylor* rule most resembles *res judicata*." *Williams*, 138 Ill. 2d at 392. The *Williams* court contrasted the *Taylor* rule with the fact that the law-of-the-case doctrine might not "preclude reconsideration of an earlier judge's order if the facts before the court changed or error or injustice were manifest." *Williams*, 138 Ill. 2d at 392. As a consequence of its analysis, the *Williams* court adopted an exception to the *Taylor* rule based on a law-of-the-case principle:

　　"Even though the *Taylor* rule's closest analogue is *res judicata* doctrine, we judge that the rule admits of one comparison to law-of-the-case doctrine: As with law of the case, if the facts before the court change materially, the court should not be bound by its former interlocutory ruling but can correct itself in light of the newly presented facts. In order to prevent this exception from swallowing the rule, the new evidence should not

-30-

be of a nature that with due diligence could have been presented earlier." *Williams*, 138 Ill. 2d at 393-94.

¶ 116    In Illinois, a recognized exception to the law-of-the-case doctrine exists when the supreme court, following the first appeal, makes a contrary ruling on the precise issue of law on which the appellate court based its former opinion. *Relph v. Board of Education of DePue Unit School District No. 103*, 84 Ill. 2d 436, 443 (1981)*; Zerulla v. Supreme Lodge Order of Mutual Protection*, 223 Ill. 518, 520 (1906); *Rice v. White*, 374 Ill. App. 3d 870, 883 (2007); *Bisco v. Liberty Mutual Insurance Co.*, 204 Ill. App. 3d 19, 21-22 (1990); *People v. Lyles*, 208 Ill. App. 3d 370, 376 (1990). Another exception exists when the appellate court finds its prior decision is palpably erroneous, but only when the court had remanded the case for a new trial. *Rice*, 374 Ill. App. 3d at 883; *Lyles*, 208 Ill. App. 3d at 376. The *Taylor* rule applies *res judicata* principles to bind the State and the circuit court to certain interlocutory rulings, yet allows the court to correct itself in cases of newly discovered facts under a law-of-the-case principle. *Williams*, 138 Ill. 2d at 393-94. I would suggest that, following law-of-the-case principles, allowing the State to reopen an issue after a manifestly erroneous ruling would not violate the prohibition on reopening issues for new theories of admission, judge shopping, or fear of piecemeal litigation. See, *e.g.*, *Williams*, 138 Ill. 2d at 388-89, 396. In addition, reconsideration of a palpably erroneous ruling would not violate the law-of-the-case doctrine's purpose "to protect settled expectations of the parties, ensure uniformity of decisions, maintain consistency during the course of a single case, effectuate proper administration of justice, and bring litigation to an end." *Emerson Electric Co. v. Aetna Casualty & Surety Co.*, 352 Ill. App. 3d 399, 417 (2004). Case law is generally construed to serve the ends of justice and to avoid mischief and needless results, such as the result suggested by the majority that the State and the court are bound by a manifestly erroneous ruling at a future trial.

¶ 117    The May 18 ruling, which used reliability to exclude the eight hearsay statements, is contrary to our supreme court's June 24, 2010, decision in *Hanson*. I believe the question of whether certain evidence is admissible at trial under the forfeiture by wrongdoing doctrine should be decided in accordance with the law as it exists after *Hanson*. Ill. R. Evid. 804(b)(5). Just as *Williams* judged the *Taylor* rule can allow corrections in light of newly discovered facts, I submit that the circuit court should not be bound, and can correct itself, when the supreme court issues a contrary ruling on the precise issue of law on which the circuit court based its earlier decision. In *Relph*, Justice Howard Ryan, who authored *Taylor*, suggested as much when he stated, in a different context, that under the law-of-the-case doctrine, "[r]egardless of the mandates, to avoid 'illogical results,' " courts should not be bound by rulings that are contrary to subsequent supreme court decisions. *Relph*, 84 Ill. 2d at 444.

¶ 118    For the foregoing reasons, I concur in part and dissent in part.